# Tarleton *v.* Southern Bank of Alabama.

*Action on Bill of Exchange by Indorsee against Drawer.*

1. *Confederate treasury notes, as consideration of bill of exchange.* — *Held,* by PETERS, J. (PECK, C. J., and SAFFOLD, J., declining to express an opinion), that " Confederate treasury notes" are not a sufficient consideration to sustain a bill of exchange, drawn in Mobile, Alabama, in 1862.

2. *Validity of bill of exchange drawn by parties in Mobile on parties in New Orleans, during interdict of commercial intercourse by President's proclamation.* — A bill of exchange, drawn by a banker in Mobile, Alabama, on a banker in New Orleans, Louisiana, in August, 1862 (when "commercial intercourse" between the people

of those two cities was prohibited by the proclamation of President Lincoln), is void, although the payee resided in Mobile, and will not support an action against the drawer, in favor of an indorsee who also resided there.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. JOHN ELLIOTT.

This action was brought by Geo. W. Tàrleton against the Southern Bank of Alabama; was founded on a bill of exchange for $11,000, drawn by said defendant at Mobile, on the 26th August, 1862, on the Louisiana State Bank at New Orleans, payable on demand, in currency, to the order of A. Batre, by whom it was indorsed to the plaintiff, and was commenced on the 23d March, 1868.  The complaint contained two counts: the first averring " that said bill was indorsed and delivered by said Batre to plaintiff, and was afterwards duly presented to said *drawer*, and protested for non-payment; of all which defendant had due notice."  The second count was in these words: " Plaintiff claims of defendant, also, the further sum of eleven thousand dollars, due on a certain other bill or check, drawn by defendant on the Louisiana State Bank of New Orleans, for the sum aforesaid, in favor of A. Batre, or order, dated August 26th, 1862, payable on presentation, in currency, and which was delivered by defendant to said Batre, and by him indorsed and delivered to plaintiff.  And plaintiff avers, that at the time of the drawing of said bill, and for a long time afterwards, war existed between the United States and the then Confederate States of America; the said city of New Orleans was in the occupation of the United States, and the city of Mobile, the residence of all the parties to said bill except said drawee, and also the residence of the plaintiff, was in the occupancy of the confederacy; and all intercourse of every kind, between citizens of the two places, was prohibited by both governments.  As soon, however, as peace prevailed, and intercourse between the two places reëstablished, and plaintiff could legally present said bill, to wit, on the 11th day of May, 1865, he caused the same to be presented to said drawee for payment, who refused to pay the same; whereupon the same was duly protested for non-payment, of which said defendant had due notice."

The defendant demurred to the second count, and assigned the following as causes of demurrer: " For that it appears by said count, and the facts therein stated and set forth, that the drawing and indorsing of said bill was contrary to the laws and public policy of the government of the United States, as well as of the so-called Confederate States, and was void; and also that the said second count is in other respects uncertain, informal, and insufficient."  The court sustained this demurrer, and the plaintiff then amended said count, by leave of the

court, as follows : " After the words ' indorsed and delivered to said plaintiff,' add the following : ' And plaintiff avers, that at the time of purchasing said bill of exchange, which purchase was for value, he intended to hold said bill until he could lawfully go to New Orleans and present the same for payment; and he avers that he did so hold said bill until he was legally authorized to present said bill to the drawee in New Orleans, for payment.' " To the count as thus amended the defendant again demurred, " for that it appears from said amended count that said bill of exchange was drawn in violation of the laws and policy of the United States ; " and the court again sustained the demurrer.

To the first count the defendant filed four pleas, the first plea being the general issue, and the others in these words : " 2. And for further plea," &c., " defendant says that the said bill of exchange was drawn and delivered by the defendant to said A. Batre without consideration, and the said Batre afterwards indorsed it without consideration to the plaintiff ; and this he is ready to verify," &c. " 3. And for further plea," &c., " defendant says that the sole and only consideration for the making of said bill of exchange was the payment to said defendant by one Alfred Batre of treasury notes of the so-called Confederate States government, known as Confederate States treasury notes, and that the plaintiff obtained said bill from said Batre for the sole and only consideration of Confederate treasury notes ; wherefore defendant says that there was no consideration for the making of said bill, and that the plaintiff is not a holder of the same for value ; and this said defendant is ready to verify," &c. " 4. And for further plea," &c., " defendant says that said bill of exchange was drawn at Mobile, Alabama, on the day it bears date, to wit, the 26th day of August, 1862, on the Louisiana State Bank, at New Orleans, in the State of Louisiana, and was to be paid on demand, at said city of New Orleans, to the order of one Alfred Batre, in currency ; and that the said Batre subsequently indorsed said bill at Mobile, Alabama, to said plaintiff ; and that at the time said bill was drawn, and at the time it was indorsed to said plaintiff, a state of war existed between the government of the United States and the so-called Confederate States of America ; and Mobile was in the possession of the forces and power of the so-called Confederate States, and New Orleans was in the possession of the forces and power of the United States ; and said defendant then was, and always has been since, and still is, a corporation located and doing business only in Mobile, Alabama ; and said plaintiff and said Batre then were, ever since have been, and still are, citizens and residents of said city of Mobile ; and the Louisiana State

Bank at New Orleans was then located and doing business at said city of New Orleans, in the State of Louisiana; wherefore defendant says, that said bill of exchange was drawn and indorsed in violation of the laws of the United States, and is void," &c.

The plaintiff took issue on the first and second pleas, and demurred to the third and fourth; and his demurrer being overruled, he then replied to the third plea, "that at the time of his purchase of said bill from said Batre, he had no knowledge or notice how said Batre obtained it, nor what he paid for it, and that he paid said Batre a valuable consideration for said bill;" and to the fourth, "that at the time he purchased said bill from said Batre (and for which he paid him a valuable consideration), he intended to hold the same, and not to present it for payment until he could do so without a violation of law; and he avers that he did hold said bill, and never presented the same for payment to said drawee, the Louisiana State Bank at New Orleans, until the forces of the United States occupied the said city of Mobile, and the plaintiff was, by permission of the military authorities at Mobile and New Orleans, authorized to present said bill to said drawee for payment, and to protest the same for non-payment; and he avers that, at the time of said presentment for payment, he was legally authorized to present the same." To these replications the defendant demurred, and the court sustained the demurrer; and the plaintiff declining to amend or plead further, there was judgment for the defendant.

The rulings of the court on the pleadings, as above stated, are now assigned as error.

E. S. DARGAN, for the appellant. — 1. The main question in the case is, was the bill void on its face, as being drawn against the law and policy of the United States? It must be borne in mind that there was never any contract between the drawer and the drawee; for the mere drawing of a bill, without an acceptance, creates no contract between the drawer and the drawee. *Matthews, Finley & Co.* v. *Sands & Co.* 27 Ala. 399, and cases there cited. The drawing of the bill created a contract only between the Southern Bank and Batre (the drawer and the payee), both of whom lived in Mobile, and could lawfully contract with each other; and Batre could lawfully indorse Tarleton, who also resided in Mobile. That the holder may, in such case, recover of the indorser and the drawer, see Story on Bills, § 104. All contracts between alien enemies are undoubtedly void; but here there was none. It may be true, also, that a contract which must, of necessity, lead to intercourse between the subjects or citizens of nations

[Tarleton v. Southern Bank of Alabama.]

at war with each other, is contrary to public policy, and therefore void ; but this bill was not a contract between alien enemies, and did not necessarily require intercourse between alien enemies, nor did any intercourse take place in consequence thereof. Tarleton, when he purchased the bill, intended to hold it until he could lawfully go to New Orleans and demand payment ; and he did so hold it. To hold such a contract void, would be to hold that where two nations are at war with each other, and a citizen or subject of one has property in the other country, he cannot lawfully sell it, either to a neutral or to his own fellow-subject. Such a doctrine carries the principle further than is required by justice, the policy of war, or the law of nations. In this connection, the case of *Alston* v. *Coleman* (7 Ala. 795), and the case therein cited from 2 Call (*Pleasants* v. *Pleasants*), are referred to ; also, *United States* v. *Parker* (1 Paine, 166), where a bill was drawn in favor of a resident citizen, in time of war, on an alien enemy in London, and a recovery was allowed against the resident citizen. In all the English cases, the bill was drawn and accepted in time of war, and the action was against the acceptor. See the cases referred to in 7 Taunton, 439.

2. That Tarleton bought with Confederate money, knowing nothing of the consideration, is no defence to the action. *Jordan* v. *Cobb*, 47 Ala. 132 ; *Thorington* v. *Smith*, 7 Wallace.

R. H. SMITH, *contra.* — 1. The principal question in this case has been expressly decided by the Court of Appeals, in Virginia, in the case of *Billgery* v. *Branch & Sons*, reported in the American Law Register, Vol. 8, p. 334 ; and by Chief Justice CHASE, in the Circuit Court of the United States at Richmond, in the case of *Moore & Brother* v. *Foster & Moore*, cited in that volume in a note on page 346. See, also, Story on Bills, § 100, and authorities cited in note ; 1 Kent's Com. 67 ; *United States* v. *Grossmayer*, 9 Wallace, 72 ; *Griswold* v. *Waddington*, 15 John. 57 ; 16 John. 438 ; 7 Peters, S. C. R. 580 ; *Potts* v. *Bell*, 8 Term, 548 ; *Willison* v. *Patterson*, 7 Taunton, 169. The contract by which the holder was enabled to call for the money at his pleasure, if he could get the bill through the lines, being void, no secret intention of the buyer of the bill could give it validity. *Evans* v. *Richardson*, 3 Merivale, 469 ; and cases in American Law Register, *supra*. The maxim applies to all transactions void by law. *Nemo plus juris transferre ad alium potest, quam ipse habet*.

2. The consideration of the bill being Confederate treasury notes, no recovery could be had on it for that reason. *Hale*

v. *Huston, Sims & Co.* 44 Ala. 134; *Lawson* v. *Miller*, 44, Ala. 616; *Wilson* v. *Bowman*, January Term, 1872. If the bill was void, no subsequent dealing in respect to it can give it validity. *Ouachita Cotton Case*, 6 Wallace, 531. Tarleton paid nothing valuable in law, and could not be a *bonâ fide holder*. *Ledbetter* v. *Walker*, 31 Ala. 175; *Mosely* v. *Tuthill*, 45 Ala.; 11 Wallace, 139, 147; Story on Bills, § 190.

PETERS, J. — There are only two questions arising in this case which have been discussed by the learned counsel for the parties at this bar. The first is as to the sufficiency of the consideration upon which the contract sued on is based. It was " Confederate treasury notes." Does such a consideration vitiate the contract? Did it make it unlawful? It is insisted by the appellant that it did not. It is contended that, on the principles settled in the case of *Thorington* v. *Smith*, decided in the Supreme Court of the United States at the December Term, in 1868, this is no longer a question of doubt. In that case, it does not seem to me that this question was involved. There, Thorington sold a tract of land to Smith, in 1864, and agreed to take in payment for the same a certain sum in " Confederate treasury notes ; " and the point to be decided was, whether such a contract could be enforced in the courts of the United States? The judgment of the court was that it could. 8 Wall. 1–6. In that case, the land was the consideration of the contract ; it was the thing for which the maker of the note agreed to pay. Confederate treasury notes were only the medium of payment. In discussing the contract in that case, Chief Justice CHASE declares that " They are transactions in the ordinary course of civil society, and, though they may indirectly and remotely promote the ends of the unlawful government, are without blame, except when proved to have been entered into with actual intent to further invasion or insurrection." 8 Wall, 12. Here, there were really no Confederate treasury notes used in the contract, but only an agreement to receive them in the future. In the case at bar, it was quite otherwise. The transaction tended to give the unlawful currency circulation and credit. This aided directly in the purpose for which it had been issued ; that is, to " promote the ends of the unlawful government." I am therefore inclined to think, that to give it credit and circulation tended greatly to aid the Rebellion. This was clearly against the public policy. The very great anxiety of the rebel authorities to keep up the credit of this spurious currency shows how highly they estimated its value as an instrument in promoting the ends of their unlawful government. It is unnecessary to refer to the acts of the rebel legislatures to establish this, or

[Tarleton v. Southern Bank of Alabama.]

to the military orders of the rebel leaders : *they are known of all men*. *Hale* v. *Huston, Sims & Co*. 44 Ala. 134 ; *Lawson* v. *Miller*, 44 Ala. 616. My own opinion is, that such consideration is insufficient to support a legal contract. Ordin. No. 38 ; Pamphlet Acts 1868, p. 185. But the court is unwilling to express an opinion on this point in this case, and it is passed for the present.

2. The second question is one of less difficulty. The bill of exchange, on which this suit is founded, was drawn by the Southern Bank of Alabama, a corporation located and having its office for the transaction of its business in the city of Mobile, in this State, on the Louisiana State Bank, located and doing business in the city of New Orleans, in the State of Louisiana. The bill bears date August 26, 1862, and is drawn in favor of the order of A. Batre, payable on demand. It was indorsed by Batre to the plaintiff in the court below, who is the appellant in this court. At the time it was drawn, war existed between the people of the United States and the people of this State, and the city of New Orleans was in the occupancy of the government of the United States, and so continued until the restoration of peace, while Mobile was in the occupancy of the forces of the government (so-called) of the Confederate States of America. The drawing of such a bill of exchange was a mercantile transaction, by which the Southern Bank, the drawer, attempted to appropriate its funds to its use in the rebel territory, which were within the territory occupied by the army, and controlled by the government of the United States. This would be tantamount to an attempt to remove the funds of the Southern Bank of Alabama on deposit in the Louisiana State Bank, in territory controlled by the United States, to the rebel territory. This would not be permissible. 8 Cranch, 155. At the time when this bill was drawn, all " commercial intercourse " was forbidden between the people of these two sections of the Union, by the proclamation of President Lincoln, issued on August 16, 1861, and which was authorized by Act of Congress, approved July 13, 1861. 12 U. S. Stats. at Large, p. 1262, Append. ; *Prize Cases*, 2 Black, 635. The intercourse thus forbidden is total. " The inhibition reaches every communication, direct or circuitous. All endeavors at trade with the enemy, by the intervention of third persons, or by partnerships, have equally failed, and no artifice has succeeded to legalize the trade, without the express permission of the government. Every relaxation of the rule tends to corrupt the allegiance of the citizen, and prevent the war from fulfilling its end." " The drawing of a bill of exchange by an alien enemy on a subject of the adverse country is an illegal and void contract, because it

is a communication and a contract." 1 Kent, 67, 68, 69, and note *a* at p. 66. These principles are equally applicable to corporations as individuals, and to the war of the late insurrection and Rebellion, as to wars between independent and foreign nations. *Billgery* v. *Branch & Sons*, 8 Amer. Law Reg. New Series, p. 334, for the year 1869. In this latter case, the numerous authorities on this important question of legal inquiry will be found to be very thoroughly and learnedly discussed.

The judgment of the court below is free from error, and it is therefore affirmed.